UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re

       Peter J. Garcia
       and Barbara Garcia,

             Debtors.

--------------------------------------------------------X

Peter J. Garcia,

             Plaintiff,

     -against-

Michael Garcia, Joaquin Garcia,
JMP Properties, LLC, and
All-Boro Management Co. LLC,

             Defendants.

--------------------------------------------------------X

Chapter  11

Case No.  11-49950-CEC

   (Jointly Administered)

Adv. Pro. No. 12-1085-CEC

## DECISION

APPEARANCES:

Michael T. Sucher, Esq.
26 Court Street, Suite 2412
Brooklyn, NY 11242
*Attorney for Plaintiff*

Robert K. Gross, Esq.
Robert N. Swetnick, Esq.
EATON & VAN WINKLE LLP
3 Park Avenue
New York, NY 10016
*Attorneys for Defendants*

CARLA CRAIG
Chief United States Bankruptcy Judge

Before the Court is the motion of Defendants to dismiss pursuant to Rule 12(b)(6) the complaint of Chapter 11 debtor and debtor-in-possession Peter J. Garcia ("Peter" or "Plaintiff").[1] Defendants Michael Garcia ("Michael") and Joaquin Garcia ("Joaquin") (the "Individual Defendants") are relatives of Peter and members of corporate defendants JMP Properties, LLC ("JMP") and All-Boro Management Co. LLC ("All-Boro") (the "LLCs").  On August 19, 2011, the LLCs, acting through the Individual Defendants, adopted resolutions expelling Peter from the LLCs, which resulted in the transfer of his membership interests in the LLCs to the Individual Defendants.  Plaintiff seeks to avoid those transfers as preferences pursuant to § 547(b), or as constructively fraudulent transfers under § 548(a)(1)(B) or DCL § 273.

Defendants seek dismissal of both the preference and fraudulent transfer claims, arguing that (i) neither of the expulsions of Peter from the LLCs constitutes a "transfer" for purposes of § 547(b) or § 548(a)(1)(B); (ii) any transfer that occurred by reason of the expulsion of Peter from the LLCs was not "for or on account of an antecedent debt" as required by § 547(b)(2), because the expulsions were carried out according to the terms of the LLCs' operating agreements (the "Operating Agreements"), in response to Peter's misconduct, and not on account of any debt he owed; and (iii) the complaint's allegation that Peter did not receive "reasonably equivalent value" in exchange for his interests in the LLCs fails to state a plausible claim for relief under § 548(a)(1)(B), as Peter has a contractual right to receive payment for those interests in an amount to be determined in two prepetition state court actions that were stayed by the filing of the petition and later removed to this Court by Plaintiff (the "Removed Actions").[2]

---

[1] Unless otherwise indicated, citations to "Rules" are to the Federal Rules of Civil Procedure and to "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure; statutory citations are to provisions of Title 11, U.S.C.; and citations to "DCL" are to New York's Debtor and Creditor Law.

[2] The first of these actions was brought in October 2010, by Michael and Joaquin, individually and on behalf of the LLCs, against Peter in the Supreme Court, Kings County, Garcia et al. v. Garcia, Index No. 24618/2010 (the "Money Damages Action"). The second was brought in November 2010 by Peter in the Supreme Court, Kings County, Garcia v. Garcia, et al., Index No. 28956/2010 (the "Dissolution Action").

For the reasons set forth below, the Court grants Defendants' motion to dismiss.  The preference claims, Counts 1 and 3, are dismissed because the transfers of Peter's membership interests do not satisfy § 547(b)(2) in that they were not made "for or on account of" an antecedent debt.  The fraudulent transfer claims, Counts 2 and 4, are dismissed because Peter's allegations that he "received less than reasonably equivalent value" for his membership interests are insufficient "to raise a right to relief" under § 548(a)(1)(B) "above [a] speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## BACKGROUND

On November 28, 2011, involuntary Chapter 7 petitions were filed against Peter and his wife, Barbara Garcia (the "Debtors").  On January 19, 2012, orders for relief were entered and the cases were converted to Chapter 11.  ECF No. 18.[3]  The Debtors have acted as debtors-in-possession since that time.  In that capacity, Peter commenced this adversary proceeding by filing a complaint on March 16, 2012 (the "Complaint").  Adv. ECF No. 1.

A.      The Complaint

The Complaint alleges the following pertinent facts:

Peter and his brother Joaquin, along with Joaquin's son Michael, founded JMP and All-

---

[3] Citations to "ECF" are to documents filed in Case No. 11-49950-CEC, identified by docket number; citations to "POC" are to proofs of claim filed in that case; citations to "Adv. ECF" are to documents filed in Adv. Pro. No. 12-1085, identified by docket entry number; and citations to "Adv. Pro. No. 12-1087, ECF" are to documents filed in the Dissolution Action, identified by docket entry number.

Boro as limited liability companies under the laws of New York.  Compl. ¶¶ 9-10, 15, Adv. ECF No. 1.  The LLCs currently own and operate a total of 15 multi-family apartment buildings in Brooklyn, New York.  Id. ¶¶ 16-17.  In forming the LLCs, Peter and the Individual Defendants entered into the Operating Agreements, under which Peter, Michael, and Joaquin were each assigned "one member unit" and a one-third "membership interest and sharing ratio in regard to management and rights to distributions and allocations of profits, losses, gains, deductions and credits" of the LLCs.  Id. ¶¶ 18-21.  On August 19, 2011 (the "Expulsion Date"), a date which is within one year of the petition date, the Individual Defendants adopted resolutions with respect to both LLCs under which Peter "was expelled as a manager and member . . ., effective immediately."  Id. ¶¶ 23-24.

Peter contests his expulsion from All-Boro on grounds that on the Expulsion Date he was a 50-percent owner and therefore was not expelled by the required majority of votes.  Id. ¶ 25.  The validity of that expulsion is one of the issues raised in the Dissolution Action.  Id. ¶ 26.  Plaintiff alleges that if the expulsion from All-Boro is deemed invalid in the Dissolution Action, "the causes of action herein stated with respect to All-Boro will be rendered moot."  Id. ¶ 27.  Peter does not, however, contest that the Individual Defendants had the requisite majority to expel him from JMP.  Id. ¶ 27 n.3.

Plaintiff alleges that to the extent the expulsions were effective they resulted in a transfer of his membership interests in the LLCs to the Individual Defendants, with each increasing their respective membership interests from one-third to 50-percent.  Id. ¶ 28.  He alleges that as a result of these transfers, the bankruptcy estate was denied certain benefits that accrued following the Expulsion Date, thus reducing the distributive share available to creditors.  These benefits include: (i) profits and appreciation in value of the net assets of the LLCs; (ii) $3,500 in net weekly distributions from the LLCs; and (iii) "the value derived from the continued pay down of

the mortgages and other debt service of the 15 parcels of real property owned by" the LLCs.  Id. ¶¶ 29-33.

The Complaint states that the transfers (i) "benefited the Defendants by unfairly improving their position over the position of other creditors"; (ii) were made at a time Plaintiff was insolvent within the meaning of § 101(32) and DCL § 271; (iii) were made on account of an antecedent debt owed by Plaintiff; (iv) will enable Defendants to receive more than they would in Chapter 7 bankruptcy if the transfers had not been made; (v) were conveyances within the meaning of DCL § 270; (vi) were not made for fair consideration within the meaning of DCL § 272, or reasonably equivalent value within the meaning of § 548(a)(1)(B)(i); (vii) were fraudulent under § 548(a)(1)(B) and DCL § 273; and (viii) constituted preferences under § 547(b).  Id. ¶¶ 34-43, 45, 49, 52, 56.

On the preference claims, Counts 1 and 3, with regard to JMP and All-Boro, respectively, Plaintiff seeks either (i) a declaration that the transfer of his membership interests is "void, ineffective and reversed and adjudging such membership interest[s] . . . restored," id. ¶¶ 46, 53, or (ii) an award of damages for the value of the membership interests in an amount to be determined by this Court, id. ¶¶ 47, 54.  On the fraudulent transfer claims, Counts 2 and 4, with regard to JMP and All-Boro, respectively, Plaintiff seeks a declaration that the transfer of his membership interests is void and that the interests are restored, but does not seek damages.  Id. ¶¶ 50, 57.

B.    The Prepetition Litigation And Resolutions

To place the dispute in this adversary proceeding in context, it is useful to consider the prepetition litigation and actions of the parties.  In early October 2010, Michael and Joaquin, individually and on behalf of the LLCs, filed the Money Damages Action against Peter.  They sought over $1.2 million in damages under theories of conversion, money had and received, and breach of contract, alleging that Peter breached the Operating Agreements by distributing an unequal share of profits to himself and diverting funds for his personal benefit, and sought over $2 million in damages predicated on fraud and breach of fiduciary duty.  POC 31-1 Ex. A.

While the Money Damages Action was pending in state court, the LLCs passed resolutions on August 17, 2010 (the "August 2010 Resolutions"), signed by Michael and Joaquin, providing that "in light of the significant obligations of" Peter to the LLCs, "his breach of fiduciary duty," and "falsification of business records" Peter is no longer an authorized signatory on company bank accounts; that Peter is barred from the LLCs' offices; and that he is precluded from entering into any financial transactions on behalf of the LLCs.  Adv. Pro. No. 12-1087, ECF No. 1-3, Exs. E & F.  Peter's weekly distributions were also reduced and he was no longer entitled to "any other distributions or salary" without the consent of the majority of the members.  Id.

In November 2010, Peter filed the Dissolution Action.  He sought a judgment (i) dissolving the LLCs and certain related entities owned by Peter and Michael (the "Related Entities"); (ii) declaring that Joaquin ceased to be a member of JMP in July 2004;[4] (iii) requiring an accounting of the affairs of the LLCs and the Related Entities; and (iv) appointing a receiver to preserve and conduct a sale of the assets of the LLCs and the Related Entities.  Adv. Pro. No.

---

[4] This allegation appears to conflict with the allegation in this adversary proceeding that "Plaintiff does not dispute that Joaquin Garcia was a 1/3 member of JMP at the time of the alleged expulsion therefrom."  Compl. ¶ 27 n.3, Adv. ECF No. 1.

12-1087, ECF No. 1-2.  In January 2011, Peter sought to reverse that part of the August 2010 Resolutions that reduced the amount of his weekly distributions.  Adv. Pro. No. 12-1087, ECF No. 1-6.  On January 26, 2011, Justice David Schmidt of the Supreme Court, Kings County, issued an order directing the LLCs to resume making distributions in the original amount, with the proviso that the payments were to be treated as loans "secured by a pledge to" the LLCs "of Plaintiff's membership interest in All-Boro."  Id.

On August 17, 2011, Peter filed an application for an order to show cause seeking to prevent his expulsion from the LLCs, and Defendants moved for relief from Justice Schmidt's January 2011 order.  Pl.'s Mem. at 5-7, Adv. ECF No. 21.  In an affidavit in support of his motion, Peter admits that he "took approximately $715,000 in excess distributions from" the LLCs.  Id. at 7.  That same day, Justice Schmidt issued an order that permitted the expulsions to proceed, but temporarily enjoined Michael and Joaquin from taking any further action "pending a determination as to whether expulsion was proper."  Adv. ECF No. 18 Ex. E.

On August 19, 2011, the LLCs, through Michael and Joaquin, adopted the resolutions to expel Peter.  Although the Operating Agreements do not set forth grounds for expulsion, the rights of a dissociating member are described in Article XI of each agreement:

> 11.2    Rights of Dissociating Member.  In the event any Member dissociates prior to the expiration of the term of this Agreement:
> . . .
>> (b)  if the Dissociation does not cause a dissolution and winding up of the Company under Article XII, the Company shall pay to the Member, within six months of such Dissociation, an amount equal to the value of the Member's Membership Interest in the Company, to be paid over a period not to exceed five years together with interest at the minimum rate necessary to avoid the imputation of interest under the [Tax] Code.  The value of the Member's Membership Interest shall include the amount of any Distributions to which the Member is entitled under the Agreement and the fair market value of the Member's Membership Interest as of the date of Dissociation as determined by [BLANK] reduced by any damages sustained by

6

the Company as a result of the Member's Dissociation.

JMP Operating Agreement § 11.2; All-Boro Operating Agreement § 11.2, Adv. ECF No. 18 Exs. G & H.  As indicated by the notation "BLANK," the Operating Agreements do not specify how the market value of a member's membership interest will be fixed.

In a decision issued in December 2011, after the petition date, Justice Schmidt (i) denied Peter's request for a preliminary injunction preventing the Individual Defendants from taking any action to expel him from the LLCs and (ii) vacated the January 26, 2011 order.  Garcia v. Garcia, No. 24618/10, 2011 WL 6380761, at *8 (N.Y. Sup. Ct. Dec. 6, 2011).  In considering whether Peter would be "irreparably harmed" if an injunction were not granted, Justice Schmidt noted that Peter "was locked out of the operation of All-Boro and JMP prior to the commencement of the [Dissolution Action], and he has stipulated that he would not protest this lockout during the course of" the Dissolution Action.  Id. at *7.  Justice Schmidt concluded that "the only impact of expulsion would be [Peter's] continued right to compensation."  Id.[5]

C.    Post-Petition Proceedings

On March 16, 2012, the same day this adversary proceeding was filed, Plaintiff removed the Money Damages Action and the Dissolution Action to this Court.  On April 27, 2012, Defendants filed a motion requesting that the Court abstain from hearing the Removed Actions, remand them to the state court, and modify the automatic stay to permit the actions to proceed (the "Motion to Remand").  ECF No. 70.  The Motion to Remand has been fully briefed, and was referred to mediation on June 20, 2012.  ECF No. 83.

Defendants filed the instant motion to dismiss on January 24, 2013, Adv. ECF No. 17, ("Defs' Mem."), Plaintiff filed opposition on February 22, Adv. ECF No. 21, ("Pl.'s Mem."),

---

[5] No party has argued that this decision, which may be void under § 362(a), should be given preclusive effect in this proceeding, and the Court does not rely upon it for purposes of this decision.

7

and Defendants filed a reply on March 1, Adv. ECF No. 22, ("Defs' Reply").  On March 14, 2013, the Court held a hearing on the motion at which counsel for Plaintiff and Defendants appeared and were heard, and the Court reserved decision.[6]

## DISCUSSION

A.   Standard For A Motion To Dismiss Under Rule 12(b)(6)

Rule 8(a)(2), the pleading standard applicable to the claims asserted in the Complaint, requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2); see Fed. R. Bankr. P. 7008(a).  Rule 12(b)(6) provides that a complaint may be dismissed "for failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6); see Fed. R. Bankr. P. 7012(b).  The purpose of Rule 12(b)(6) "'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'"  Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  In making this determination, a court must liberally construe the complaint, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.  See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir.), cert. denied, 554 U.S. 930 (2008).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986); see Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by

---

[6] The parties were permitted to submit further briefing on the issue of "set-off."  However, the issues raised in those briefs are not relevant to the Court's disposition of Defendants' motion.

mere conclusory statements, do not suffice."). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. In other words, plausibility "'depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (quoting L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011)).

As a general matter, a court's review under Rule 12(b)(6) is limited to the four corners of the complaint and any documents attached to it. See Halebian, 644 F.3d at 130. Subject to certain exceptions, when "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). One exception is that a court may consider materials, such as contracts, that are referred to in the plaintiff's complaint. As explained by the Second Circuit:

> In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint. The exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.

Global Network Commc'ns, Inc, 458 F.3d at 157 (citations omitted). In addition, courts may consider "public records, including complaints filed in state court, in deciding a motion to dismiss." Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,

369 F.3d 212, 217 (2d Cir. 2004); see Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 426

(2d Cir. 2008) (stating that "matters judicially noticed . . . are not considered matters outside the

pleadings" requiring conversion under Rule 12(d)).

Here, although the Operating Agreements are not attached to the Complaint, there is no

question that Plaintiff relied on them – the Complaint defines the transfers Peter seeks to avoid

by reference to Article XI of the Operating Agreements:

> To the extent [the] expulsions [of Plaintiff from the LLCs] were
> effective to cause dissociation of Plaintiff under Article XI of the
> respective operating agreements of JMP and All-Boro, the
> expulsions effectively caused the transfer of Plaintiff's
> membership interest in JMP and All-Boro to the individual
> Defendants, pro rata, changing their respective membership
> interests in and to each entity, from 33.33% each, to 50% each (the
> "Transfers").

Compl. ¶ 28, Adv. ECF No. 1.  In addition, the Removed Actions are referenced in the

Complaint and are before this Court.  Accordingly, in ruling on Defendants' motion, the Court

will consider the Operating Agreements, particularly Article XI.  The Court will also take

judicial notice of the documents filed in the Removed Actions, "not for the truth of the matters

asserted . . . but rather to establish the fact of such litigation and related filings."  Global Network

Commc'ns, 458 F.3d at 157 (quotations omitted).  In so doing, conversion under Rule 12(d) is

not required.

B.    Plaintiff's Causes Of Action

1.    Elements Of A Preference Claim

Under the preference statute, § 547(b), the trustee or debtor-in-possession "may avoid

any transfer of an interest of the debtor in property":

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor
> before such transfer was made;
> (3) made while the debtor was insolvent;

(4) made--
    (A) on or within 90 days before the date of the filing of the
    petition; or
    (B) between ninety days and one year before the date of the
    filing of the petition, if such creditor at the time of such transfer
    was an insider; and
(5) that enables such creditor to receive more than such creditor
would receive if--
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent
    provided by the provisions of this title.

11 U.S.C. § 547(b)(1)-(5).  Each of these five elements must be proven to sustain a preference

claim.

    2.        Elements Of A Constructive Fraudulent Transfer Claim

Section 548(a)(1)(B) empowers the trustee or debtor-in-possession to avoid a transfer of

an interest in property of the debtor under a theory of constructive fraud.  11 U.S.C.

§ 548(a)(1)(B).  As is relevant here, a plaintiff is required to plead the following elements: (i) the

debtor had an interest in property; (ii) the transfer of this interest occurred within one year of the

filing of the petition; (iii) the debtor was insolvent on the transfer date or rendered insolvent

thereby; and (iv) the debtor "received less than a reasonably equivalent value in exchange for

such transfer."  Id.; BFP v. Resolution Trust Corp., 511 U.S. 531, 535 (1994).

Section 544(b) authorizes the trustee or debtor-in-possession to avoid a transfer of an

interest in property of the debtor by utilizing applicable law that permits such avoidance.  11

U.S.C. § 544(b).  Here, the "applicable law" is DCL § 273, which permits the avoidance of a

conveyance if it is made without "fair consideration" and the debtor was insolvent at the time of

the transfer or rendered insolvent thereby.  The absence of "fair consideration" can be

established by showing either that the transfer was not in exchange for "fair equivalent" value or

that the transferee did not act in good faith.  DCL § 272; Picard v. Madoff (In re Bernard L.

Madoff Inv. Sec. LLC), 458 B.R. 87, 110 (Bankr. S.D.N.Y. 2011) ("Madoff"). "Fair equivalent" value under DCL § 272 and "reasonably equivalent value" under § 548(a)(1)(B)(i) have substantially the same meaning.  Madoff, 458 B.R. at 110.

3.    The Purpose Of The Preference And Fraudulent Transfer Statutes

The preference statute serves two core purposes.  The first is to prevent unequal treatment of similarly situated creditors in order to promote the "central" bankruptcy policy of "equality of distribution among creditors ."  Begier v. IRS, 496 U.S. 53, 58 (1990).  Thus, § 547(b) "prevents the debtor from favoring one creditor" because of its insider status or otherwise "over others by transferring property shortly before filing for bankruptcy." Id.  The second is to discourage creditors "from a race to the courthouse during the slide into bankruptcy."  Velde v. Kirsch, 543 F.3d 469, 472 (8th Cir. 2008).

The focus of fraudulent transfer law is not preventing favoritism or discouraging a race to the courthouse, but setting aside transactions that "unfairly or improperly deplete a debtor's assets" or "claims against those assets."  Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.), 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010) ("Bach") (quotations omitted).  Thus, "section 548 reaches transactions which are not frauds; instead, any transaction made by a financially impaired debtor for less than an even exchange of value is vulnerable."  Id. at 876 (quotations and alterations omitted).  Bach further explains that § 548 is

> "not intended to insure that creditors will never be deprived of a valuable asset.  The deprivations [this statute is] designed and intended to prevent are those that are the result of an intentional fraud or a constructive fraud resulting from a wrongful or unwarranted participation on the part of the Debtor, whether by omission or commission.  Therefore, not every prepetition transaction or occurrence which may technically be a transfer under Section 101(54) [of the Bankruptcy Code] and which results in a debtor being deprived of an asset while it is insolvent or undercapitalized and for which it receives no consideration or less than a fair consideration [such as when a debtor admittedly

12

> defaults under a contract prepetition resulting in the termination of
> that contract] is necessarily avoidable as a fraudulent transfer."

Id. (alterations in original) (quoting Metro Water & Coffee Servs., Inc. v. Rochester Cmty.

Baseball, Inc. (In re Metro Water & Coffee Servs. Inc.), 157 B.R. 742, 747 (W.D.N.Y. 1993)

("Metro")).

C.     Whether The Preference Or Fraudulent Transfer Provisions Can Be Used To Avoid
       Peter's Expulsion From The LLCs

Defendants argue that "the prepetition removal of a business participant in accordance

with the parties' agreements and applicable State Law is not cognizable as a preference or

fraudulent transfer in a subsequent bankruptcy case."  Defs' Reply at 5, Adv. ECF No. 22.  To

support this claim they advance two related arguments.  The first is that the expulsion does not

constitute a "transfer" within the meaning of the avoidance statutes.  Defendants argue that "[t]he

law is well settled that the pre-petition termination of a debtor's interest in a business or property

for cause, made pursuant to the terms of an agreement between the parties and effected in

accordance with non-bankruptcy law, does not constitute a transfer" but is instead a valid

"termination."  Defs' Mem. at 7-8, Adv. ECF No. 17 (quotations omitted); see id. at 11, 14.

The second is a policy argument, derived mainly from authority finding such transactions

to be "transfers" but nonetheless immune from avoidance.[7]  According to Defendants, the

avoidance provisions should not be used "to reverse prepetition [ ] removal from businesses

based on wrongdoing or material defaults" because this would interfere with "the interests of

---

[7] See, e.g., Durso Supermarkets, Inc. v. Durso (In re Durso Supermarkets, Inc.), 193 B.R. 682, 698 (Bankr. S.D.N.Y. 1996) (termination of commercial lease after default was transfer); Metro, 157 B.R. at 745 ("Given the definition [of transfer] and the underlying intent of Congress, the termination of the Concession Agreement must be found to constitute a transfer within the meaning of Sections 101(54) and 548").  A number of courts have held that termination of a contract can constitute a "transfer" under § 101(54).  See In re Robotic Vision Sys., Inc., 322 B.R. 502, 508 (Bankr. D.N.H. 2005) (surrender of patented technology following default under terms of settlement agreement was transfer); Thompson v. Doctor's Assocs., Inc. (In re Thompson), 186 B.R. 301, 307 (Bankr. N.D. Ga. 1995) (termination of sublease following default was transfer); Lloyd McKee Motors, Inc. v. Chrysler Corp. (In re Lloyd McKee Motors, Inc.), 166 B.R. 725, 728 (Bankr. D.N.M. 1993) ("McKee") (termination of franchise agreement following default was transfer).

New York State in controlling the membership rights" of LLC members. Defs' Reply at 12, Adv. ECF No. 22. Accordingly, debtors should be prohibited "from improperly using bankruptcy proceedings to attempt to revive interests that were validly terminated under the terms of a pre-petition contract." Defs' Mem. at 8, Adv. ECF No. 17.

Both the preference and fraudulent transfer statutes apply to <u>transfers</u> of an interest of the debtor in property. <u>See</u> 11 U.S.C. §§ 547(b) and 548(a)(1) (also permitting relief with respect to "obligations" of a debtor). Thus, if Defendants' first argument is correct, Plaintiff cannot maintain his claims. The Bankruptcy Code defines the term "transfer" broadly, to include, among other things, "'each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; (ii) or an interest in property.'" <u>Bach</u>, 435 B.R. at 877 (quoting 11 U.S.C. § 101(54)(D)). <u>See Ames Dep't Stores, Inc. v. Wertheim Schroder & Co. (In re Ames Dep't Stores, Inc.)</u>, 161 B.R. 87, 90 (Bankr. S.D.N.Y. 1993) ("The legislative history of Section 101[54] of the Bankruptcy Code makes it clear that the definition of the term 'transfer' was intended to be as 'broad as possible.'" (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 27 (1978))).

The Supreme Court has explained that an interest of the debtor in property "subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." <u>Begier</u>, 496 U.S. at 58. Under § 541(a)(1), the filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). <u>See</u> <u>Chartschlaa v. Nationwide Mut. Ins. Co.</u>, 538 F.3d 116, 122 (2d Cir. 2008) ("Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.") (quotations omitted), <u>cert. denied</u>, 555 U.S. 1213 (2009). As a general rule, contract rights and the interests arising from them are

property of the estate.  See Wallach v. Nowak (In re Sherlock Homes of W.N.Y., Inc.), 246 B.R.

19, 24-25 (Bankr. W.D.N.Y. 2000) (holding that termination of contract rights was a transfer

subject to avoidance).  Accordingly, when a member of an LLC files a bankruptcy petition, his

interest in the LLC, and any rights he has under the LLC's operating agreement, becomes

property of the estate.  See Duncan v. Dixie Mgmt. & Inv., Ltd. Partners (In re Dixie Mgmt. &

Inv., Ltd. Partners), 474 B.R. 698, 700 (Bankr. W.D. Ark. 2011); see also Manson v. Friedberg,

No. 08 Civ. 3890, 2013 WL 2896971, at *3 (S.D.N.Y. June 13, 2013) ("Whatever legal or

equitable interest an individual has in an LLC [under state law] is personal property within the

meaning of the bankruptcy estate under § 541.").  These interests include economic rights such

as the right to distributions, and non-economic rights including the right to participate in the

management and operation of the LLC.  See, e.g., Klingerman v. ExecuCorp., LLC (In re

Klingerman), 388 B.R. 677, 679 (Bankr. E.D.N.C. 2008).

 In each of the cases cited by the Defendants in support of their contention that the

avoidance provisions of the Code may not be used "to reverse prepetition [ ] removal from

businesses based on wrongdoing or material defaults," Defs' Reply at 12, Adv. ECF No. 22, the

court held that the contract at issue, and the debtor's rights thereunder, had terminated as a result

of the debtor's breach, where the contract either provided for automatic or unilateral termination,

or was terminated by judicial determination.  See Sullivan v. Willock (In re Wey), 854 F.2d 196,

199 (7th Cir. 1988) (contract specifically stated that it terminated and became null and void upon

default); In re 421 Willow Corp., No. MISC. 03-182, 2003 WL 22318022, at *1 (E.D. Pa. Oct. 9,

2003) (prior to petition date, state court had determined that commercial lease was terminated

due to default); Edwards v. Fed. Home Loan Mortg. Corp. (In re LiTenda Mortg. Corp.), 246

B.R. 185, 192 (Bankr. D.N.J. 2000) (servicing agreement gave party right to disqualify servicer

with or without cause and termination was effective immediately and was conclusive), aff'd, 276

F.3d 578 (3d Cir. 2001); <u>Callia v. Original Great Am. Chocolate Chip Cookie Co., Inc.</u>, No. 93-4011, 1994 WL 151091, at *1 (E.D. La. Apr. 13, 1994) (franchise agreement with revocable license); <u>Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co. (In re Coast Cities Truck Sales, Inc.)</u>, 147 B.R. 674, 677-78 (D.N.J. 1992) ("<u>Coast Cities</u>") (stating "[t]his Court effectively terminated the Dealer Agreement . . . <u>before</u> [the debtor] filed its petition in bankruptcy" and noting agreement permitted termination upon default), <u>aff'd</u>, 5 F.3d 1488 (3d Cir. 1993).

However, none of these cases addresses the rights of members of an LLC under New York's Limited Liability Company Law or an LLC operating agreement. The Defendants have not identified any provision in the Operating Agreements that states that upon a member's default, the agreements are terminated, the LLCs are dissolved, or that the defaulting member's rights and interests are extinguished. To the contrary, by their terms, the Operating Agreements were not terminated upon default or on the Expulsion Date; Section 11.2(b) of the Operating Agreements specifically contemplates "dissociation" of a member that does not result in the dissolution and winding up of the LLCs.

Accordingly, under the rationale of <u>Beiger</u>, to the extent the expulsions acted to terminate Peter's rights as a member under the Operating Agreements or New York law – rights that would have been part of the estate but for the expulsions – they constitute "transfers" subject to the avoidance provisions of the Bankruptcy Code. Indeed, contrary to Defendants' contention that "every" court to consider the viability of avoidance actions for the prepetition removal of business owners for wrongdoing or default, has dismissed the cause of action, in the only case uncovered by this Court that addresses whether removal of a defaulting member from an LLC constitutes a "transfer," the court held that it did. <u>See</u> <u>Kotoshirodo v. Dorland & Assocs. Inc. (In re Lull)</u>, Adv. No. 08-90001, 2008 WL 3895561, at *5-6 (Bankr. D. Haw. Aug. 22, 2008)

(holding that defaulting LLC member's prepetition removal as member of LLC "falls within the broad meaning of 'transfer of an interest of the debtor in property' in § 547(b)" because his "membership interest would have constituted property of his bankruptcy estate under § 541(a) had he not been removed").

Defendants' policy argument is equally unpersuasive.  The cases Defendants rely on do not address the factual situation presented here.  Defendants did not establish that the Operating Agreements are executory or that their actions were in the ordinary course.  Cf. Metro, 157 B.R. at 746 (relying in part on the fact that termination of executory contract was in the "ordinary course of commercial business" to conclude transfer was not subject to avoidance).  Defendants waited some 10 months after the filing of the Money Damages Action to adopt the resolutions expelling Peter; the Operating Agreements, by their terms, have not terminated; and a number of issues regarding the parties' rights under those agreements remain unresolved.  Moreover, neither case law nor the language or purpose of the Bankruptcy Code supports the adoption of a per se rule that the avoidance provisions of the Code do not apply to prepetition terminations of contracts under state law.  See, e.g., McKee, 166 B.R. at 728-29 (distinguishing Metro and Coast Cities on grounds that "fact issues are presented as to whether when viewed as a whole, the transaction terminating the franchise effected a fraudulent transfer").  While the facts of a particular case may warrant the conclusion that the termination of a debtor's contract rights is not avoidable under §§ 547 or 548, a blanket rule that immunizes such transfers from avoidance is inappropriate.[8]

---

[8] It is also not clear what effect the expulsions had on Peter's rights.  The Operating Agreements do not clearly delineate the rights of the parties, and New York's Limited Liability Company Law does not contain a provision governing the expulsion of members.  See generally Man Choi Chiu v. Chiu, 896 N.Y.S.2d 131 (N.Y. App. Div. 2010).  See also In re Garrison-Ashburn, L.C., 253 B.R. 700, 704 (Bankr. E.D. Va. 2000) (applying Virginia law and concluding that dissociation terminated right to participate in management of company but member still retained economic rights).

D.      Whether The Transfers Were For Or On Account Of An Antecedent Debt Under §
        547(b)(2)

Defendants contend that the Complaint fails to state a claim under the preference statute

because the transfers were not made for or on account of an antecedent debt as required by

§ 547(b)(2).  They argue that "[i]t was not the fact that the Debtor owed the LLC[s] money that

resulted in his termination.  It was the Debtor's dishonesty."  Defs' Mem. at 12, Adv. ECF No.

17.  Defendants explain that under Section 11.2(b) of the Operating Agreements, "the stated

consideration for the Plaintiff['s] dissociation from the LLCs consists of a right to receive

payments from the LLCs made over a five year period" and that "[b]ecause the Plaintiff's right

to such consideration was conferred contemporaneously, and consists of a right to receive

monies in the future, the Plaintiff's dissociation . . . would be for contemporaneous consideration

and not on account an antecedent debt."  Id. at 13 (quotations omitted).

Plaintiff argues that there is no dispute that he owed a debt to the LLCs for distributions

he received in excess of his proportional share, or that as a result of the transfers, Joaquin's and

Michael's interests in the LLCs became "proportionally more valuable."  Pl.'s Mem. at 20, Adv.

ECF No. 21.  Plaintiff states that because Defendants concede these two points, their argument

must be that although "there was an antecedent debt, the actual expulsions were (proximately)

caused not by the existence of the debt, but by the dishonesty that they claim caused the debt in

the first place."  Id. at 21.  However, Plaintiff argues, "the alleged wrongful act is inextricably

tied together with the debt.  The alleged wrongful act is the taking of money – nothing else."  Id.

at 21-22.

Here, the Complaint fails to allege that the transfers were "for or on account of an

antecedent debt owed by the debtor before such transfer was made" as required by § 547(b)(2).[9]

---

[9] As a threshold matter, the Complaint fails to identify an antecedent debt or even refer to Peter's payment of

Before explaining why this is so, it is appropriate to consider the relevant terms of the statute. Section 101(5) of the Code defines the term "claim," as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"  11 U.S.C. § 101(5)(A).  "It is well settled that 'claim' and 'debt' are synonymous, such that whenever a 'claim' arises, a 'debt' necessarily arises as well; the only distinction between the two terms is the party to which it applies."  Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.), 357 B.R. 32, 47 (Bankr. S.D.N.Y. 2006).  Under § 547(b)(2), "a debt is antecedent if the debtor incurs it before making the alleged preferential transfer."  G. G. Survivor Creditor Corp. v. Harari (In re G. Survivor Corp.), 217 B.R. 433, 440 (Bankr. S.D.N.Y. 1998). Finally, the phrase "owed by the debtor when the transfer was made" means that "at the time of the transfer there was a recognizable 'claim' that was: (1) against the debtor, rather than only against a third party, and (2) that was pre-existing, rather than one which arose simultaneously with the transfer."  Breeden v. L.I. Bridge Fund, L.L.C. (In re Bennett Funding Grp., Inc.), 220 B.R. 739, 742 (B.A.P. 2d Cir. 1998).

    Although Peter admits he owed a debt to Defendants, and that debt was incurred prior to the transfers within the meaning of § 547(b)(2), there is no plausible basis to conclude that Peter's expulsion was "for or on account of" that antecedent debt.  As explained by the Fourth Circuit, "[a] common sense approach for determining whether a loan repayment is 'for or on account of a debt owed by the debtor' is to consider whether the creditor would be able to assert a claim against the estate, absent the repayment."  Smith v. Creative Fin. Mgmt., Inc. (In re Virginia-Carolina Fin. Corp.), 954 F.2d 193, 197 (4th Cir. 1992) (alterations omitted).  In other

---

excessive distributions to himself.  See, e.g., Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.), 431 B.R. 337, 355-56 (Bankr. S.D.N.Y. 2010) (dismissing preference claim where complaint did not identify a specific antecedent debt).

words, if the reversal of the transfer would increase the amount of the creditor's claim against the estate, the transfer may be considered to be "on account of" that debt.  Accord Bennet Funding, 220 B.R. at 742 ("We believe that the common sense approach suggested by the Fourth Circuit Court of Appeals in [Virginia–Carolina] should be utilized in determining . . . whether a loan repayment is 'for or on account of an antecedent debt'").

   The transfers resulting from Peter's expulsion from the LLCs fail this commonsense test. This is because the transfer of Peter's membership interests did not satisfy, in whole or in part, any debt owed to Defendants.  Put differently, the amount owed by Peter after his expulsion from the LLCs was the same as it was immediately prior to that event. As explained by another court in the context of termination of rights under a franchise agreement, "[a]lthough Plaintiffs parted with an interest in property upon Defendants' termination of Plaintiffs' rights under the franchise agreement, equipment lease, and sublease, the transfer of possession did not constitute payment of Defendants' claim or any portion thereof."  Thompson, 186 B.R. at 311; see also Peltz v. Vancil (In re Bridge Info. Sys., Inc.), 474 F.3d 1063, 1068 (8th Cir. 2007) (holding that payment by debtor to tenant in connection with prepetition settlement of a lawsuit was to buy out tenant's future option, as provided in the lease, to renew for an additional term, such that payment was not for or on account of damages, but for the value of the option).

   In fact, under Section 11.2(b) of the Operating Agreements, far from satisfying an antecedent debt owed by Peter to the LLCs, the transfer of Peter's membership interests gave rise to a debt owed by the LLCs to Peter.  Section 11.2(b) provides that "the Company shall pay to the Member, within six months of [ ] Dissociation, an amount equal to the value of the Member's Membership Interest in the Company[.]"  Section 11.2(b) also states that the amount to be paid in exchange for a dissociated member's membership interests may be "reduced by any damages sustained by the Company as a result of the Member's Dissociation."  Defendants construe this

provision to mean that they can reduce the amount Peter is owed for his membership interests to the extent of any damages they are entitled to in the Money Damages Action, by offset or recoupment.  Peter disputes whether Defendants may offset or recoup any or all of Peter's allegedly unauthorized distributions or other claimed damages against amounts he is entitled to receive under Section 11.2(b).  See Mem. of Law in Opp'n on Issue of Set-Off, Adv. ECF No. 24.  Whether offset or recoupment would be available to the Individual Defendants or to the LLCs need not be determined in the context of Defendants' motion.  Even under Defendants' interpretation, the transfers of Peter's membership interests would not be for or on account of an antecedent debt within the meaning of § 547(b)(2).  To satisfy § 547(b)(2), the transfers must reduce the debt owed by the transferor, Peter, to the transferees, Defendants.  Section 11.2(b) does the opposite: it creates an obligation owed by the LLCs to Peter for the value of his membership interests.

In sum, because the transfers of Peter's membership interests effected by his expulsion from the LLCs do not reduce Peter's debts to Defendants, they are not for or on account of an antecedent debt within the meaning of § 547(b)(2).  Accordingly, the Complaint fails to state a claim for avoidance of the transfers as a preference under § 547(b).  As the transfers are not avoidable under § 547(b), Plaintiff is not entitled to recovery under § 550.  See 11 U.S.C. § 550(a) (providing for relief only "to the extent a transfer is avoided").

For these reasons, Claims 1 and 3, predicated on § 547(b) and § 550, must be dismissed.[10]

---

[10] Based on this ruling, it is unnecessary to consider Defendants' argument for dismissal based on § 547(b)(5).

E.      Whether The Transfers Were Made For Less Than Reasonably Equivalent Value Under
        § 548(a)(1)(B)(i)

Defendants contend that Peter cannot plead that he received less than reasonably

equivalent value because the consideration for the transfers "consists of a right to receive

payments from the LLCs that have not yet been made, in amounts that have not yet been

established, and that were to be established in the state court actions before" he removed them to

this Court. Defs' Mem. at 15, Adv. ECF No. 17.  Plaintiff does not directly address this

argument.  See Pl.'s Mem. at 2, Adv. ECF No. 21 (referring the Court instead to the parties'

briefing on the Motion to Remand).

Under § 548(d), "value" is defined to mean, "property or satisfaction . . . of a . . . debt of

the debtor, but does not include an unperformed promise to furnish support to the debtor  . . . ."

11 U.S.C. § 548(d)(2)(A).  However, the "concept of reasonably equivalent value has not been

defined in the Code . . . [and] [t]hus, 'Congress left to the courts the obligation of marking the

scope and meaning of reasonably equivalent value.'"  Mellon Bank, N.A. v. Official Comm. of

Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.), 92 F.3d 139, 148 (3d Cir. 1996)

(alterations omitted) (quoting Cooper v. Ashley Commc'ns, Inc. (In re Morris Commc'ns NC,

Inc.), 914 F.2d 458, 466 (4th Cir. 1990)).

When determining whether reasonably equivalent value was given in exchange for a

transfer, some courts consider first whether any value was given; if so, the next issue is whether

that value was reasonably equivalent.  See, e.g., Devon Mobile Commc'ns Liquidating Trust v.

Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), No. 02–41729, 2006 WL 687153,

at *11 (Bankr. S.D.N.Y. Mar. 6, 2006) ("In determining value, the Court makes a two fold

inquiry: whether the debtor received any value at all in exchange for the transfer; i.e. any

realizable commercial value as a result of the transaction, and whether that value was in fact

reasonably equivalent to the [property] transferred by the debtor."); R.M.L., 92 F.3d at 149

("[B]efore determining whether the value was 'reasonably equivalent' to what the debtor gave

up, the court must make an express factual determination as to whether the debtor received any

value at all."). "The determination of whether the debtor received reasonably equivalent value

for his interest requires the court to compare what was given with what was received."

Pergament v. Reisner (In re Reisner), 357 B.R. 206, 211 (Bankr. E.D.N.Y. 2006) (quotations

omitted). In performing this analysis, courts consider the totality of the circumstances. See id.

(stating that "[r]elevant considerations include the fair market value of the property at the time of

the transfer, the nature of the property, and its relative marketability") (quotations omitted).

Here, as a threshold matter, the Complaint must be dismissed because it fails to plead any

facts concerning the value of Peter's membership interests as compared to the consideration

received in exchange for them. Instead, Plaintiff merely states in conclusory fashion that he did

not receive reasonably equivalent value. See Hydrogen, 431 B.R. at 353 (dismissing claim under

§ 548(a)(1)(B) due to "a complete absence of facts supporting the allegation that the Debtor

received less than reasonably equivalent value in exchange" for the transfers); Burch v. Huston

(In re USDigital, Inc.), 443 B.R. 22, 39 (D. Del. 2011) (dismissing claim where complaint

"fail[ed] to provide any factual allegations supporting the assertion that [debtor] did not receive

reasonably equivalent value").[11]

Moreover, the Operating Agreements "read in [their] entirety, [ ] undermine the

legitimacy of [Peter's] claim." Global Network Commc'ns, 458 F.3d at 157. As noted, Section

11.2(b) of the Operating Agreements provide that "the Company shall pay to the Member, within

six months of [ ] Dissociation, an amount equal to the value of the Member's Membership

---

[11] Although Defendants' motion did not refer to Plaintiff's claims under the DCL, the Court's analysis under
§ 548(a)(1)(B) applies equally to these claims. See, e.g., Madoff, 458 B.R. at 110.

Interest in the Company[.]"  Applying the twofold analysis, "value" was given in exchange for the transfers in the form of a contractual right to payment.  See, e.g., Frank v. Kiesel (In re Denison), 292 B.R. 150, 156 (E.D. Mich. 2003) (stating that "[c]ontract rights to future consideration can provide reasonably equivalent value").  While it is true that an illusory promise of future consideration does not provide value, Peter's right to receive payment in exchange for his membership interests is clear cut.  Cf. Reisner, 357 B.R. at 211.  The amount of consideration due to Peter is a subject of the Removed Actions, and has not yet been determined; and any arguments Plaintiff may raise concerning the proper method of valuing his membership interests may be advanced in the context of those proceedings, whether in this Court or in the state court.[12]

The threadbare allegations in the Complaint do not permit an inference that Plaintiff received or will receive less than reasonably equivalent value in exchange for his interests in the LLCs.  A complaint predicated on the mere possibility that a plaintiff will not receive reasonably equivalent value in exchange for transferred property is not plausible on its face.  See Twombly, 550 U.S. at 570 (stating that to survive a motion under Rule 12(b)(6) the allegations in the complaint must "raise a right to relief above [a] speculative level").  In sum, the facts alleged in the Complaint, accepted as true, do not state a plausible claim against the Defendants under either § 548(a)(1)(B) or DCL § 273.

The Court thus dismisses the fraudulent transfer claims, Counts 2 and 4.

---

[12] Plaintiff may believe that he would have received greater benefits in the future in the form of income or appreciation in value if he had not been expelled. While these considerations may be relevant to the extent it is determined that Plaintiff is entitled to damages for wrongful termination, they are of questionable relevance to the issue of reasonably equivalent value. Generally speaking, the relevant time-period for assessing the value of the property transferred is the date of the transfer.  See, e.g., Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.), 247 B.R. 51, 107 n.76 (Bankr. S.D.N.Y. 1999) (noting that even if the value of transferred stock had risen "their value at the time of the transfer . . . is the only value that has any bearing for purposes of § 548").

## CONCLUSION

For the foregoing reasons, the Complaint is dismissed pursuant to Rule 12(b)(6).  A separate order will issue.



**Dated: Brooklyn, New York**
**August 8, 2013**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**