UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In re

Peter J. Garcia
and Barbara Garcia,

Debtors.

Chapter 11

Case No. 11-49950-CEC

(Jointly Administered)

---------------------------------------------------------------X

Peter J. Garcia,

Plaintiff,

-against-

Michael Garcia, Joaquin Garcia,
JMP Properties, LLC, and
All-Boro Management Co. LLC,

Defendants.

Adv. Pro. No. 12-1085-CEC

---------------------------------------------------------------X

# DECISION

APPEARANCES:

Michael T. Sucher, Esq.
26 Court Street, Suite 2412
Brooklyn, NY 11242
*Attorney for Plaintiff*

Robert K. Gross, Esq.
Robert N. Swetnick, Esq.
Eaton & Van Winkle LLP
3 Park Avenue
New York, NY 10016
*Attorneys for Defendants*

CARLA CRAIG
Chief United States Bankruptcy Judge

On August 8, 2013, this Court issued a decision (the "Decision") and an order (the "Order") granting the defendants' motion pursuant to Rule 12(b)(6) to dismiss the complaint of Chapter 11 debtor and debtor-in-possession Peter J. Garcia ("Peter" or "Debtor") seeking to avoid the pre-petition involuntary transfers of his interests in certain businesses as preferences or fraudulent transfers.[1] Before the Court is the Debtor's motion pursuant to Bankruptcy Rule 9023 seeking reconsideration of the Order to the extent it dismissed the claims seeking relief under the Bankruptcy Code's preference provision, § 547. The Debtor argues that the Court "misapprehended a material question of law and policy" in holding that the challenged transfers were not "for or on account of an antecedent debt" within the meaning of § 547(b)(2). (Pl.'s Mem. of Law in Supp. of Mot. for Reconsideration, Adv. Pro. No. 12-1085-CEC, ECF No. 37-1 at 1.[2]) For the following reasons, the motion is denied.

## BACKGROUND[3]

On August 19, 2011, Michael Garcia and Joaquin Garcia (the "Individual Defendants"), relatives of Peter and members of corporate defendants JMP Properties, LLC and All-Boro Management Co. LLC (the "LLCs," and together with the Individual Defendants, the "Defendants"), caused the LLCs to adopt resolutions expelling Peter from the LLCs. As a result of the expulsions, Peter's membership interests in the LLCs were transferred to the Individual Defendants. Pursuant to the operating agreements of the LLCs, upon the expulsion, the Defendants became obligated to pay Peter the market value of his interests in the LLCs. This amount has not yet been determined.

---

[1] Unless otherwise indicated, citations to "Rules" are to the Federal Rules of Civil Procedure and to "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure; statutory citations are to provisions of Title 11, U.S.C.; and citations to "DCL" are to New York's Debtor and Creditor Law.

[2] The Debtor's memoranda of law in support of this motion were not paginated. In order to provide pinpoint citations to the memoranda, the Court treated the page containing the "Preliminary Statement" as page 1.

[3] A more detailed description of the background of this motion is provided in the Decision. See Garcia v. Garcia (In re Garcia), 494 B.R. 799, 803-806 (Bankr. E.D.N.Y. 2013).

On November 28, 2011, an involuntary petition was filed against the Debtor. On March 16, 2012, the Debtor commenced this adversary proceeding against the Defendants alleging that the involuntary transfers of his membership interests are avoidable as preferences under § 547(b), and as fraudulent conveyances under § 548(a)(1)(B).

On January 24, 2013, the Defendants filed the motion to dismiss the adversary proceeding.

On August 8, 2013, the Court issued the Decision and the Order granting the Defendants' motion. The fraudulent conveyance claims were dismissed because, among other reasons, the Debtor received reasonably equivalent value in exchange for his interests in the LLCs in the form of the right to receive payment of the value of the interests as of the date of the expulsion. The preference claims were dismissed because the Complaint failed to allege a plausible basis to infer that the transfers were "'for or on account of an antecedent debt owed by the debtor before such transfer was made' as required by §547(b)(2)." Garcia, 494 B.R. at 812.

In reaching the conclusion that the transfers did not satisfy § 547(b)(2), the Court relied in part on a "common sense approach for determining whether a loan repayment is 'for or on account of a debt owed by the debtor,'" which is "to consider whether the creditor would be able to assert a claim against the estate, absent the repayment." Id. at 813 (quoting Smith v. Creative Fin. Mgmt., Inc. (In re Virginia–Carolina Fin. Corp.), 954 F.2d 193, 197 (4th Cir. 1992)). Applying this approach to the involuntary transfer of Peter's membership interests in the LLCs, the Court stated:

> [T]he transfer of Peter's membership interests did not satisfy, in whole or in part, any debt owed to Defendants. Put differently, the amount owed by Peter after his expulsion from the LLCs was the same as it was immediately prior to that event. As explained by another court in the context of termination of rights under a franchise agreement, "[a]lthough Plaintiffs parted with an interest in property upon Defendants' termination of Plaintiffs' rights

> under the franchise agreement, equipment lease, and sublease, the transfer of possession did not constitute payment of Defendants' claim or any portion thereof." [Thompson v. Doctor's Assocs., Inc. (In re Thompson), 186 B.R. 301, 311 (Bankr. N.D.Ga.1995).]; see also Peltz v. Vancil ( In re Bridge Info. Sys., Inc.), 474 F.3d 1063, 1068 (8th Cir. 2007) (holding that payment by debtor to tenant in connection with prepetition settlement of a lawsuit was to buy out tenant's future option, as provided in the lease, to renew for an additional term, such that payment was not for or on account of damages, but for the value of the option).

Garcia, 494 B.R. at 813-14.

## APPLICABLE LEGAL STANDARDS

### I. Reconsideration under Bankruptcy Rule 9023 and Rule 59(e)

Rule 59, made applicable to this adversary proceeding pursuant to Bankruptcy Rule 9023, permits a party to make a motion "to alter or amend a judgment." Fed. R. Civ. P. 59(e). Pursuant to Rule 54(a), made applicable to this matter by Bankruptcy Rule 7054(a), the Order is a "judgment" that may be reconsidered under Rule 59 because it is an "order from which an appeal lies." Fed. R. Civ. P. 54(a); Fed. R. Bankr. P. 7054.

Rule 59(e) does not provide specific grounds for amending or reconsidering a judgment. See Fed. R. Civ. P. 59(e). The Second Circuit has held that "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotations and citation omitted); Doe v. New York City Dep't of Social Servs., 709 F.2d 782, 789 (2d Cir. 1983).

The Plaintiff seeks reconsideration on the grounds that the Court's determination that the transfers of his interests in the LLCs were not "on account of an antecedent debt" within the meaning of § 547(b)(2) constituted "a manifest error of law." (Pl.'s Mem. of Law in Supp. of Mot. for Reconsideration, Adv. Pro. No. 12-1085-CEC, ECF No. 37-1 at 3.) Under the "clear

error" standard, relief is "appropriate only when a court overlooks 'controlling decisions or factual matters that were put before it on the underlying motion' and which, if examined, might reasonably have led to a different result." Corrines v. Am. Physicians Ins. Trust, 769 F. Supp. 2d 584, 593-94 (S.D.N.Y. 2011) (quoting Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000)). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). It is well settled that "[a] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an occasion for making new arguments that could have been previously advanced." Associated Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

"A motion for reconsideration is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" Corrines, 769 F. Supp. 2d at 593-94 (quoting In re Initial Public Offering Sec. Litig., 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., Nos. 05 Civ. 3430, 05 Civ. 4759, & 05 Civ. 4760, 2006 WL 1423785, at *1 (2d Cir. 2006)). See also Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990) (motions made pursuant to Rule 59(e) must adhere to stringent standards to prevent "wasteful repetition of arguments already briefed, considered and decided"). The determination of whether a motion for reconsideration should be granted is within the sound discretion of the court. See Spa 77 G L.P. v. Motiva Enters. LLC, 772 F. Supp. 2d 418, 437 (E.D.N.Y. 2011).

II. Avoidance of Preferential Transfers under § 547(b)

Section 547(b) provides:

> [T]he trustee [or debtor-in-possession] may avoid any transfer of an interest of the debtor in property --
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if--
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Each of these five elements must be proven to sustain a preference claim.

## DISCUSSION

The Debtor asserts that the Court erred in holding that the transfers of his interests in the LLCs did not satisfy § 547(b)(2) because they did not reduce, in whole or in part, the debt owed to the Defendants. He argues that the phrase “on account of” contained in § 547(b)(2) is ambiguous because it can have two meanings: an “accounting meaning . . . when it constitutes partial payment for the antecedent debt” or a “causative meaning . . . when it is made ‘because of’ the antecedent debt.” (Pl.’s Mem. of Law in Supp. of Mot. for Reconsideration, Adv. Pro. No. 12-1085-CEC, ECF No. 37-1 at 6.) He contends that, because there is no controlling case law interpreting the phrase “on account of,” the Court must “rely on extrinsic sources of construction, including the statutory purpose and policies which underlay its enactment.” (Pl.’s

Mem. of Law in Supp. of Mot. for Reconsideration, Adv. Pro. No. 12-1085-CEC, ECF No. 37-1 at 1.)

The Debtor urges this Court to adopt what he describes as the "causative meaning" in the context of his preference claims, and to conclude that that the complaint adequately pleaded that the transfers were "on account of an antecedent debt" as required by § 547(b) because Peter's debt to the Defendants is the reason the Individual Defendants expelled him from the LLCs. In other words, the Debtor argues, given that, had he not taken approximately $715,000 in excess distributions, he would still have his membership interests in the LLCs, the transfer of the membership interests was "on account of" that antecedent debt. In support of this position, the Debtor cites a statement by the Supreme Court, in a case under Title VII, that "the ordinary meaning of 'because of' is 'by reason of' or 'on account of.'" Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2527 (2013) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009).

This argument was already rejected in the Decision.[4] Garcia, 494 B.R. at 812. This motion does not cite any controlling law overlooked by the Court in reaching that conclusion. Therefore, there is no basis to reconsider that holding under Rule 59(e). Moreover, the Debtor's argument that the Court should apply the Supreme Court's statement concerning the meaning of of "because of," in Nassar, in analyzing the meaning of "on account of" as used in § 547(b)(2), is rejected on the merits.

The Debtor's reliance on Nassar is misplaced for multiple reasons. First, the issue before the Supreme Court in Nassar was not the interpretation of "on account of"; rather, it was whether

[4] The Defendants argued that the Debtor's dishonesty, and not the debt owed to them, was the reason for the expulsion. In response, the Debtor argued that "the alleged wrongful act is *inextricably* tied together with the debt. The alleged wrongful act *is the taking of money*—nothing else." (Pl.'s Mem. at 21-22, Adv. No. 12-1085-CEC, ECF No. 21).

the causation standard applicable to status-based discrimination claims under Title VII also applies to retaliation claims under Title VII. Nassar, 133 S. Ct. at 2524. The statement relied upon by the Debtor for the proposition that "on account of" means "because of" was included in Nassar as background concerning the history of certain provisions of Title VII and other anti-discrimination statutes, and the standards applicable thereto. Specifically, Nassar was quoting Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009), which addressed the standard applicable to a claim under the Age Discrimination in Employment Act of 1967. The quoted statement from Nassar is thus dicta, and irrelevant as well.

Title VII claims are demonstrably different from preference claims. Title VII is intended to protect individuals from the intentional tort of "wrongful discrimination in the Nation's workplaces and in all sectors of economic endeavor," and to "provide[] remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers." Nassar, 133 S. Ct. at 2522. On the other hand, the policies behind § 547(b), as explained in the Decision, are to prevent unequal treatment of similarly situated creditors in order to promote the "central" bankruptcy policy of "equality of distribution among creditors," Begier v. I.R.S., 496 U.S. 53, 58 (1990), and to discourage creditors "from a race to the courthouse during the slide into bankruptcy," Velde v. Kirsch, 543 F.3d 469, 472 (8th Cir. 2008).

The relevant language of the statutes at issue is also different. The provisions analyzed in Nassar and Gross contain the words "because of," not "on account of." The fact that "because of," a broad phrase, was held in the discrimination context to mean "by reason of" or "on account of" does not lead to the conclusion that § 547(b)'s use of the narrower phrase "on account of" necessarily means "because of" or "by reason of." Interestingly, notwithstanding the use of the word "because" in Title VII's provisions for status-based discrimination and for retaliation claims, the Supreme Court in Nassar concluded that different causation standards

should be applied to those claims. Nassar, 133 S. Ct. at 2532-33. This further supports the conclusion that the interpretation of "because of" in the discrimination context should not be automatically extended to preference claims under the Bankruptcy Code.

The Debtor's argument that the transfers were "on account of an antecedent debt" because the Defendants were motivated to expel Peter from the LLCs because of their claim against him for excessive distributions runs counter to the well-established principle that intent of the parties is irrelevant when determining whether a transfer constituted a preference under § 547(b). See, e.g, T.B. Westex Foods v. Fed. Deposit Ins. Corp. (In re T.B. Westex Foods), 950 F.2d 1187, 1195 (5th Cir. 1992) ("The purpose of a transfer is not dispositive of the question whether it qualifies as an avoidable preference under section 547(b) because 'it is the effect of the transaction, rather than the debtor's or creditor's intent, that is controlling."'); Gladstone v. Bank of Am. (In re Vassau), 499 B.R. 864, 868 (Bankr. S.D. Cal. 2013) ("[I]t is well established that the intent of the parties is irrelevant to the preference analysis."); Picard v. Katz, 462 B.R. 447, 450 (S.D.N.Y. 2011) (Preferences are avoidable under § 547(b) "regardless of the facial validity of the transfer or the intent of the parties to the transfer."); Waldschmidt v. Chrysler Credit Corp. (In re Messenger), 166 B.R. 631, 634 n.2 (Bankr. M.D. Tenn.1994) ("The enactment of the Bankruptcy Code in 1978 removed any 'scienter' requirement for preference recovery. The knowledge or intent of the creditor is irrelevant in determining whether an avoidable transfer occurred." (citations omitted)).

On the other hand, the Court's conclusion that the transfers of the Debtors interests were not "on account of an antecedent debt" because they did not reduce or satisfy the Defendants' claim against the Debtor, is entirely consistent with applicable case law interpreting "on account of" as used in § 547(b)(2). See, e.g., USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 888 (9th Cir. 2010) (stating that transfer of security interest satisfied § 547(b)(2) when it

"was in exchange for" antecedent loan); Baker Hughs Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.), 416 F.3d 394, 398 (5th Cir. 2005) (describing the inquiry under § 547(b)(2) as "whether the transfer . . . was made in payment of an antecedent debt"); Klein v. Tabatchnick, 610 F.2d 1043, 1049 (2d Cir. 1979) ("'Preference implies paying or securing a pre-existing debt of the person preferred.'" (quoting Dean v. Davis, 242 U.S. 438, 443 (1917))); Peltz v. Vancil (In re Bridge Info. Sys., Inc.), 327 B.R. 382, 387-89 (B.A.P. 8th Cir. 2005) (holding that payment by debtor to tenant in connection with prepetition settlement of a lawsuit was to buy out tenant's future option, as provided in the lease, to renew for an additional term, such that payment was not for or on account of damages, but for the value of the option), aff'd, 474 F.3d 1063 (8th Cir. 2007); Tese-Milner v. Ediden & Assocs. (In re Operations NY LLC.), 490 B.R. 84, 102 (Bankr. S.D.N.Y. 2013) (dismissing preference claim under Rule 12(b)(6) where complaint "fail[ed] to plead any facts suggesting that the . . . transfers satisfied a debt that the [d]ebtor owed to [defendant]"); Condren v. Harrison (In re Borison), 226 B.R. 779, 790 (Bankr. S.D.N.Y. 1998) ("The essential requirement of Code § 547 is the payment with property of the debtor of an antecedent debt within 90 days of the filing of the petition." (emphasis omitted)).

The Supreme Court has instructed that "[w]hen conducting statutory interpretation, [courts] 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'" Gross, 557 U.S. at 174 (quoting Fed. Express Corp. v. Holowecki, 552 U.S. 389, 393 (2008)). Based upon the ample case law under § 547 and its underlying policies, and the significant differences between discrimination claims and preference claims, this Court declines to apply the interpretation of "because of" as used in Title VII claims to "on account of" as used in § 547(b)(2).

The Debtor also points out that the creation or perfection of a security interest may be avoided as a preference, even though the security interest does not reduce the claim it secures.

He therefore contends that the Court erred by concluding that the transfer of his interests in the LLCs was not "on account of" the Debtor's antecedent debt because it did not reduce or satisfy his debt to the Defendants. The Debtor argues that, had the LLCs' operating agreements "provided that an actual security interest in the Debtor's LLC membership interests . . . was agreed to be given to secure 'any obligation which would arise between the parties that was not cure upon demand,'" there would be no question that § 547(b) would apply. (Pl.'s Reply Mem. of Law in Supp. of Mot. for Reconsideration, Adv. Pro. No. 12-1085-CEC, ECF No. 43 at 3.)

While it is true that the creation or perfection of a security interest may be avoidable as a preference, the transfers of Peter's interests in the LLCs neither created nor perfected a security interest in the Debtor's property to secure the Defendants' claims.[5] Therefore it is irrelevant whether the creation or perfection of such a security interest during the preference period would have been avoidable.[6]

In his reply, the Debtor contends that the expulsions from the LLCs, "while technically not the perfection of a security interest, act in many ways just like the perfection of a security interest to the detriment of other [c]reditors" because the other creditors are deprived of receiving any economic benefit of the ongoing value of the interests, while the Defendants are given "priority." (Pl.'s Reply Mem. of Law in Supp. of Mot. for Reconsideration, Adv. Pro. No. 12-1085-CEC, ECF No. 43 at 2.) The Plaintiff asserts that "the expulsions must be avoided as preferences because the detriment and prejudice to other unsecured creditors is unacceptably large and the improvement of Defendants' position at the expense of those other creditors is

[5]The Decision focused on whether the transfers reduced or satisfied the Defendants' claim against the Debtor because there was no allegation that the transfers of the Debtor's interests created or perfected a security interest in favor of the Defendants.

[6] Indeed, the Debtor acknowledges that it is a "counterfactual example."

simply antithetical to sound bankruptcy policy." (Pl.'s Reply Mem. of Law in Supp. of Mot. for Reconsideration, Adv. Pro. No. 12-1085-CEC, ECF No. 43 at 6.)

This argument could have been raised before, and does not cite any controlling law overlooked by the Court. It therefore does not constitute a basis for reconsideration under Rule 59(e), and, in any event, it must be rejected on the merits. It is unclear how the Debtor contends that his expulsion from the LLCs impermissibly improved Defendants' position in this bankruptcy case at the expense of other creditors. As explained in the Decision, Peter received reasonably equivalent value in exchange for his interests in the LLCs, in the form of a contractual right to payment of the value of his membership interest, and therefore, contrary to the Debtor's assertions, his other creditors were not "deprived of any economic benefit." Garcia, 494 B.R. at 814-16. An asset transferred for reasonably equivalent value (thereby unavoidable under § 548(a)(1)(B)) may not be recovered as a preference merely because it subsequently appreciates in value. For example, if the debtor sold real property at the current market rate within 90 days of filing for bankruptcy, the debtor may not avoid the sale merely because the property's value increases thereafter.

Even if the Debtor's contractual right to receive payment of the value of his membership interests may be set off by the Defendants against their claims against the Debtor for return of the excess distributions, this right of setoff provides no basis to avoid the transfer under § 547(b).[7] The Defendants' rights concerning setoff are governed by § 553. That section provides, in pertinent part:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against

[7] The Debtor challenges whether the Defendants have a right of setoff, and there has been no determination on that issue.

> a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that--
>
> > (1) the claim of such creditor against the debtor is disallowed;
> >
> > (2) such claim was transferred, by an entity other than the debtor, to such creditor--
> > > (A) after the commencement of the case; or
> > > (B)(i) after 90 days before the date of the filing of the petition; and
> > > (ii) while the debtor was insolvent (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561); or
> >
> > *(3) the debt owed to the debtor by such creditor was incurred by such creditor*--
> >
> > > *(A) after 90 days before the date of the filing of the petition;*
> > > *(B) while the debtor was insolvent; and*
> > > *(C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).*
>
> (b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, 561, 365(h), 546(h), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of--
>
> > (A) 90 days before the date of the filing of the petition; and
> >
> > (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

11 U.S.C. § 553(a), (b)(1) (emphasis added). Thus, under § 553(a)(3), if the Debtor could show that the debt owed by the Defendants to the Debtor as a result of the expulsion was incurred for the purpose of obtaining a right of setoff, the Debtor might be able to prevent the Defendants

from setting off that debt again the amounts he owed by reason of the excess distributions. Significantly, however, nothing in this statutory scheme would provide a basis for avoiding the transfer of the Debtor's membership interests. The Debtor cannot use § 547(b) to circumvent § 553. Although a "setoff has the effect of paying one creditor more than another," it has long been acceptable "despite the preferential advantages bestowed upon certain creditors." Bohack Corp. v. Borden, Inc. (In re Bohack Corp.), 599 F.2d 1160, 1165 (2d Cir. 1979) (discussing § 68 of the Bankruptcy Act).

For these reasons, the Debtor has not set forth any basis under Rule 9023 to reconsider this Court's determination that the transfer of the Debtor's interests in the LLCs were not "on account of an antecedent debt" as required by § 547(b)(2).

CONCLUSION

For the foregoing reasons, the Debtor's motion pursuant to Bankruptcy Rule 9023 is denied. A separate order will issue.

**Dated: Brooklyn, New York**
**February 11, 2014**

United States Bankruptcy Court Eastern District of New York

Carla E. Craig

**Carla E. Craig**
**United States Bankruptcy Judge**